IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA A. ESQUIVEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | No. 11 C 9200 |
| v. | ) | |
| | ) | Judge John A. Nordberg |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff Lisa A. Esquivel's motion seeking reversal of the ALJ's decision denying her social security disability benefits. 42 U.S.C. § 405(g). The ALJ found that plaintiff suffered from impairments of migraine headaches, multiple sclerosis, degenerative disc disease of the lumbar spine, anxiety, and depression but found that she was not disabled because, despite these impairments, she could perform light work subject to certain limitations.

The ALJ's decision will be upheld if it is "supported by substantial evidence, meaning evidence a reasonable person would accept as adequate to support the decision." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The ALJ does not have to "address every piece of evidence or testimony presented, but must provide 'an accurate and logical bridge' between the evidence and her conclusion that a claimant is not disabled." *Id.* Moreover, "[i]f a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Id.*

Plaintiff has raised a number of arguments as to why the ALJ's decision is not supported by substantial evidence. After reviewing the parties' briefs and the administrative record, we conclude that more explanation is needed from the ALJ and that a remand is therefore appropriate. Here are the key reasons for this conclusion.

**Evidence After Plaintiff's Last Date Insured.** One issue lurking throughout the ALJ's opinion is the extent to which medical evidence generated after the date last insured (September 30, 2006) can be relied upon to reach conclusions about her condition *before* that date. Plaintiff complains that although the ALJ summarized the medical evidence from after the date last insured, the ALJ failed to explain why no weight was given to this evidence. (Pl. Mem. 7-8.) We

agree. In particular, plaintiff's MS, which was formally diagnosed after the date last insured, is a progressive disease that may not be definitively diagnosed until later stages when certain abnormalities only first become apparent in clinical findings. (Pl. Reply 4.) In reading the ALJ's opinion, we are unclear as to how she viewed this argument. Her opinion states: "The progressive nature of MS exacerbates the ability to demonstrate earlier limitations." (AR 33-34.) This statement is vague, and the ALJ does not go on to explain what she means, nor how it relates to the specific pieces of evidence submitted by plaintiff. Moreover, while the ALJ seemed to discount medical evidence from after the date last insured, the ALJ at other places cited to this evidence to support her ruling. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). For example, as pointed out by plaintiff, the ALJ stated that in February 2008 an MRI showed a decrease in the size of plaintiff's brain lesions. (Pl. Repl 5; AR 32.) But the ALJ did not acknowledge that later that same month a new MRI showed that plaintiff had two new brain lesions. (AR 553.) On remand, the ALJ should consider all the evidence and should provide more explanation about how she views the connection between the later symptoms and how they may or may not provide evidence regarding plaintiff's condition before the date last insured (regarding among other things her MS onset date and headaches, as discussed below).

**Dr. Freeman's Expert Opinion.** During the administrative hearing, the ALJ indicated that she needed additional evidence. Plaintiff submitted a report from Dr. Freeman, a neurologist who works for the SSA, who reviewed plaintiff's records and concluded that her impairments during the relevant period were presumptively disabling and would have precluded her working before the date last insured. (Pl. Mem. 9; AR 409-16.) The ALJ discounted Dr. Freeman's report, finding that he failed "to provide a logical or thorough nexus from the medical evidence" to his conclusions. (AR 37.) However, the ALJ did not explain why she reached this conclusion nor did she adequately analyze the specific evidence in Dr. Freeman's report. Plaintiff asserts that Dr. Freeman's report was based on a "thorough review" and "comprehensive analysis" of all the medical evidence. (Pl. Mem. at 10; AR 409-11.) Specifically, in concluding that plaintiff's MS had reached a significant level of severity by January 2004, Dr. Freeman relied on "a constellation of findings including magnetic resonance imaging scan results, the waxing and waning of neurological symptoms, the development of optic neuritis, and spinal fluid studies." (Pl. Mem.10.) The ALJ should address this specific evidence. Plaintiff further argues that, if the ALJ believed Dr. Freeman's opinion did not contain enough detail, the ALJ should have recontacted Dr. Freeman to obtain additional testimony. (*Id.* 11.) As a second reason for discounting Dr. Freeman's report, the ALJ stated that she was relying on certain state agency physicians who thought plaintiff's evidence was insufficient. However, the ALJ did not further discuss the reasons for why she gave more weight to the agency physicians than to Dr. Freeman. In sum, we agree with plaintiff and find that the ALJ should address the specific evidence in Dr. Freeman's report.

**Migraine Headaches.** Plaintiff complains that the ALJ failed to sufficiently analyze her claim that she suffered from debilitating migraine headaches. (Pl. Mem.2.) We agree. Dr. Chronopoulos reported that plaintiff experienced four to five migraines monthly, improving to three monthly, and that these headaches were severe. (Pl. Reply 2; AR 805.) Plaintiff argues that

having three severe headaches a month is consistent with missing three days of work a month. (Pl. Reply 2.) The ALJ never made any finding about the frequency of her headaches. (*Id.*)

The ALJ discounted the evidence because she concluded that plaintiff sought "very little medical treatment" for her headaches, and when she did, she was treated effectively with medication. (AR 33.) As an example of the latter, the ALJ noted that plaintiff went to Christ Hospital in January 2005 for an "intractable headache" and was later discharged, after taking medication, with a "pain level of zero at discharge." (*Id.*) As an example of the former, the ALJ noted that plaintiff on two occasions went to the hospital (one time for foot pain and another for a kidney stone) and did not mention that she was suffering from a headache. (AR 31.)

This analysis fails to adequately address plaintiff's headache evidence. First, the ALJ seems to assume that plaintiff claimed to have had a continuous headache when she only claimed to have intermittent headaches. (Pl. Reply 13.) Given her claim that she had 3 to 5 headaches a month, it is not surprising that on two hospital visits, when being treated for other acute conditions, she did not report having a migraine. Second, the ALJ, in our view, wrongly assumes that if there is a medication that *eventually* eliminates a particular headache, then plaintiff suffers no limitations from those headaches. Consider for example the January 2005 headache. (AR 31, 33.) Although it is true that the headache went away, it did so only after plaintiff had first visited her obstetrician who prescribed Vicodin and Valium, which provided only partial relief, and only after she then went to the emergency room and was given two other medications – Compazine and Toradol. Even if this treatment could be considered effective on some level, it still required multiple doctor visits and multiple medications over a number of days before it was eventually resolved. This would not be an easy treatment regimen on a daily basis for someone trying work a regular job. *See Scott*, 647 F.3d at 740 ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce"). Moreover, the record suggests that the headache medications did not work consistently. At various points, plaintiff was given the following medications for migraines: Vicodin, Valium, Compazine, Toradol, Propanalol, Inderal, Maxalt, Verapamil, and Bexta. (AR 31-33.) Third, the ALJ failed to consider plaintiff's financial difficulties as a possible explanation for why she did not go to the doctor more often for her headaches. (Pl. Mem. at 18-19; AR 68, 79, 94-97, 103; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference," and one of those reasons is "an inability to afford treatment").) On remand, the ALJ should "develop a full and fair record" regarding this migraine evidence. *Id.* at 698.

**Post Hearing Evidence.** In addition to seeking a remand to address these and other issues, plaintiff has also asked for a remand to consider new evidence. Specifically, after the record closed, plaintiff submitted a letter from a neurologist named Jeffrey Curtin who had been treating plaintiff since 2009. (Pl. Mem. 19-20.) Dr. Curtin reviewed an MRI brain scan of plaintiff from 2005 and concluded that it showed several brain lesions, thus supporting an onset date of MS in at least 2005. The written summary of the same scan, which is all Dr. Freeman and the ALJ had to rely on, indicated that the scan was normal and plaintiff had no brain lesions.

Plaintiff argues that this evidence from Dr. Curtin satisfies the criterial for a sentence six remand under 42 U.S.C. § 405(g) because it is new, material, and good causes exists for not submitting it earlier. Evidence is considered material under this provision if there is a "reasonable probability" the ALJ would have reached a different result if the evidence had been considered. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005).

The Commissioner does not question the newness or good cause requirements, but does argue that the evidence is not material. (Def. Resp.15.) The Commissioner states that Dr. Curtin reviewed the MRI several years later, suggesting that his review was therefore less relevant. But we fail to see how a review of an MRI scan would be less accurate if done several years after the taking of the scan. The Commissioner also argues that the ALJ could still have concluded, despite this new information, that plaintiff was not disabled in 2005. While perhaps true, we find that there is a reasonable probability this scan could make a difference because, as plaintiff correctly notes, the ALJ relied heavily on plaintiff's alleged failure to provide corroborating medical evidence. (Pl. Reply 15.)

In conclusion, we find that the ALJ's opinion does not fully explain the basis for the ruling and does not contain a full and fair summary of the evidence, as discussed above and as further articulated in plaintiff's opening and reply briefs. Accordingly, plaintiff's motion for summary judgment [Dkt. # 18] is granted. The ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**ENTER:**

_____
**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** June 13, 2013